UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| PC CONNECTION, INC. d/b/a CONNECTION )<br>)<br>  Plaintiff )<br>)<br>  v. )<br>)<br>PETER SILLICH )<br>)<br>  Defendant. )<br>) | Civil Action No. 1:22-CV-00524-LM |

**PLAINTIFF'S SURREPLY IN OPPOSITION TO MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Plaintiff submits this Surreply to address new factual arguments raised in Defendant's Reply In Support Motion to Enforce Settlement Agreement [Dock. 26] and the accompanying Affidavit of Rocky Banks [Dock 26-1].

**A.     Defendant Breached the Settlement Agreement**

1.     Defendant does not (and could not) deny that on January 12, 2023, he issued a price quote on behalf of PartnerOne IT to one of his former Connection accounts, ROCIC. This is a matter of documented proof.[1]

2.     When Defendant nonetheless denies having "solicited" ROCIC, he apparently means he did not <u>initiate</u> contact with ROCIC. Reply, p. 2. This is immaterial. The parties' settlement barred Defendant from having any "direct or indirect contact" with any of his former Connection accounts for 18 months. Id. Moreover, as explained in Plaintiff's Memorandum of Law in Support of Preliminary Injunction ("PI Memo") [Dock. 6-2], Defendant's employment

---

[1] The price quote is included as Exhibit B [Dock. 13-3] to the Affidavit of Christopher Carter submitted in support of Connection's Motion For Contractual Award of Fees [Dock 13-1].

1

agreement with Connection prohibits Defendant from, inter alia, "encourage[ing] or induc[ing]" customers to reduce their business; seeking to "persuade or induce" customers to do business with someone else; or accepting business from a customer or prospect.  PI Memo., p. 17. Moreover, courts have routinely rejected a rule providing safe harbor under a restrictive covenant where a client made first contact with a former employee.  See PI Memo., pp. 14-17 (collecting authorities); see also Corporate Technologies, Inc. v. Harnett, 731 F.3d 6 (1st Cir. 2013) ("[a]ccording decretory significance to who makes the first contact would undermine [the protections of the restrictive covenant].")[2]

**B.      Defendant Breached Irrespective of Whether the Agreement Was Executed**

3. Defendant maintains the parties had an enforceable settlement agreement as of January 11, 2023.  Yet, in his Reply, he argues for the first time ever that the settlement agreement "was not effective" until it was signed.  Reply, p. 3.

4. Defendant points to no facts to support this contradictory position, or to otherwise suggest the parties understood or intended that until they executed a written document, Defendant could violate the settlement terms (and the non-solicitation covenant) with impunity, causing additional damages that Plaintiff did not take into account when it decided whether to settle on the terms offered by Defendant.  Moreover, Defendant's conduct demonstrates he did not have this understanding or intent.  Upon learning that Plaintiff had discovered the price quote he issued to ROCIC, Defendant did not try to allege the conduct was fair game because a paper

---

[2] The Banks Affidavit alleges that Banks contacted Sillich because "no one from PC Connection contacted me about renewing" an Adobe license.  Banks Aff., ¶ 4.  This is false.  A Connection Renewals Specialist, Molly Austin, emailed Banks on January 8, 2023 and stated: "This is an email reminder that your Adobe VIP subscription will expire in February."  Second Affidavit of Owen R. Graham, attached at Exhibit 1, ¶ 2 (1/8/23 email).

agreement had not yet been signed.  Instead, he tried to mollify Plaintiff by proposing to increase (from $5,000 to $10,000) the amount of his payment to Connection.

5.  Defendant points to undersigned counsel's January 5, 2023 email to Attorney Lambert, which included as a proposed settlement term the requirement that the 18-month no-contact period would run from the "consummation" of the settlement.  Nothing in that email, or in any of the subsequent settlement communications between counsel, suggested that a settlement would not be consummated or attained until a separate written document was executed.

6.  Finally, even were the parties' settlement regarded as executory as of January 12, 2023 (and it should not be), Defendant's breach of the agreed terms constituted a repudiation of that agreement.  Under the law of accord and satisfaction, "[u]ntil performance of the accord, the original duty is suspended unless there is such a breach of the accord by the obligor as discharges the new duty of the obligee to accept the performance in satisfaction."  Restatement (Second) of Contracts § 281.  A material breach of an accord – even an executory accord – permits the non-breaching party to proceed with its original claims.  See, e.g. In re Worldwide Direct, Inc., 268 B.R. 69, 72 (D. Del. Bnkr. 2001) ("Where an accord executory is breached, the non-breaching party may sue on the accord executory or may sue for breach of the underlying agreement."); Hauswald Bakery v. Pantry Pride Enterprises, Inc., 553 A.2d 1308, 1311 (Md. App. 1989) ("Where an executory accord is indeed reached and the obligor—usually the defendant—breaches that accord by failing to tender the agreed-upon performance, . . . the oblige may enforce either the original duty or any duty under the accord.").

7.  Here, the parties agreed to settle Plaintiff's claims related to enforcement of the restrictive covenants in Defendant's Employment Agreement.  One of the material terms of the

settlement was that Defendant would comply with the restrictive covenants for a period of 18 months. It be illogical to hold that Defendant, having already concluded a settlement through counsel, was nonetheless free to violate the restrictive covenants, and sure up as much harmful competitive advantage as possible, until the time that Defendant inked his signature on a settlement document.

      WHEREFORE, Plaintiff respectfully requests that this Honorable Court issue an Order:

A.      Denying Defendant's Motion to Enforce Settlement Agreement;

B.      Awarding such other and further relief as is deemed just and equitable.

                                          Respectfully submitted,

                                          PC CONNECTION, INC.,
                                          D/B/A CONNECTION
                                          By its attorneys,

Dated: March 24, 2023                  /s/ *Christopher H.M. Carter*
                                          Christopher H.M. Carter, Esq. (#12452)
                                          Owen R. Graham, Esq. (#266701)
                                          Hinckley, Allen & Snyder LLP
                                          650 Elm Street, Suite 500
                                          Manchester, NH 03101
                                          Tel: (603) 225-4334
                                          ccarter@hinckleyallen.com
                                          ograham@hinckleyallen.com

## CERTIFICATE OF SERVICE

     I hereby certify that on the above date a copy of the foregoing has been forwarded to all counsel of record via the Court's electronic filing system.

                                          /s/ *Christopher H. M. Carter*
                                          Christopher H.M. Carter