UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

PC Connection, Inc.,

    v.                                                Civil No. 22-cv-524-LM
                                                   Opinion No. 2023 DNH 057 P

Peter Sillich

**O R D E R**

On April 5, 2023, the court granted plaintiff PC Connection's motion for preliminary injunction without objection from defendant Peter Sillich. Doc. no. 28. However, the court asked PC Connection to file a more specific proposed preliminary injunction order or a brief explaining why the previously filed proposed order was sufficient. PC Connection elected to file a new proposed preliminary injunction order. Considering PC Connection's motion for preliminary injunction, its amended proposed order, the evidence submitted in support, and Sillich's failure to oppose the motion, the court finds the following facts and enters the following preliminary injunction. See Fed. R. Civ. P. 52(a)(2) (requiring court to find facts and state its conclusions of law when granting an interlocutory injunction); Fed. R. Civ. P. 65(d).

BACKGROUND

For purposes of PC Connection's preliminary injunction motion, Sillich has not contested the relevant facts. PC Connection employed Peter Sillich as an "account manager" from August 3, 2020, until July 28, 2022. PC Connection is a

"value-added reseller of specialized IT products and services." Doc. no. 6-8 (affidavit of Margaret Murphy). At PC Connection, Sillich's responsibilities included developing PC Connection's business relationships with customers. He identified these customers' IT needs and worked with PC Connection's "technical and engineering staff to develop customized IT solutions for customers." Id. ¶ 11.

In the 12 months preceding the end of Sillich's employment with PC Connection, Sillich had "regular, direct contact with representatives and decision-makers" for 120 PC Connection customers. Id. All of these businesses were actively purchasing from PC Connection. The 120 businesses—referred to in this order as the "covered customers"—are listed in the conclusion of this order.

Sillich agreed to a contract with PC Connection as part of his employment. The contract (known as the "Employee Agreement") contained restrictive covenants. In particular, paragraph 4.3 of the Employee Agreement contained a non-solicitation clause, which stated, in relevant part, as follows:

> I agree that, during my employment and during the 18-month period immediately following the termination of my employment for any reason, I will not, directly or indirectly, (a) solicit, encourage or induce any customer of Connection to terminate or diminish its business relationship or patronage with the Company; (b) seek to persuade or induce any such customer or prospective customer of Connection to conduct with anyone else any business or activity which such customer or perspective customer conducts or could conduct with the company; or (c) accept business from any such customer.

Doc. no. 6-5 at 7. The non-solicitation clause limits its scope:

> [T]hese restrictions shall apply (y) only with respect to those Persons who are or have been a customer of Connection at any time within the immediately preceding

> one-year period or whose business has been solicited on behalf of the Company by any of its officers, employees or agents within said one-year period, other than by form letter, blanket mailing or published advertisement, and (z) only if I have performed work for such Person during my employment with the Company or have been introduced to, or otherwise had non-incidental contact with, such Person as a result of my employment, or other associations with the Company, or have had access to Confidential Information which would assist in the solicitation of such Person.

Id.

Paragraph 9 of the Employee Agreement delays the 18-month term of the non-solicitation clause "during any period" when Sillich is "in violation" of the restriction. Id. at 11.

"Several weeks" after Sillich's employment with PC Connection ended, a representative from a PC Connection vendor told PC Connection that Sillich had contacted the representative on LinkedIn. Sillich had asked the representative to prepare a pricing proposal for ▌▌▌▌▌▌▌. ▌▌▌▌▌▌▌ is a covered customer. The vendor representative told PC Connection that Sillich had asked whether the vendor could provide the same "special pricing arrangement" to Sillich that the vendor had provided to PC Connection.

On September 1, 2022, PC Connection's legal counsel wrote a letter to Sillich. The letter referenced the Employee Agreement's terms, told Sillich that PC Connection had reason to believe he had violated those terms, and told Sillich to stop violating them. Sillich responded that he was not employed, that he had not solicited any covered customers, and that he agreed to comply with the terms.

3

In the following weeks, Sillich sought price quotes from vendors for other covered customers. These customers included ███████████, ████████, and ████████████.

On September 28, 2022, PC Connection sent a second cease and desist letter to Sillich. In an email the same day, Sillich responded that he did not believe he had any obligations to PC Connection, and he stated that some of his former PC Connection customers were dissatisfied with their new PC Connection representative. Sillich stated in the email that he had directed those customers to PartnerOne IT, another IT services reseller. Sillich stated that he had begun working for PartnerOne IT on September 22.

After PC Connection's cease and desist letters, Sillich urged InterCambio ██████ to transfer its business to Sillich's new employer. Sillich and another customer, ████████████, also scheduled a meeting to discuss the purchase of software.

## DISCUSSION

"A preliminary injunction is an extraordinary remedy never awarded as of right." Winter v. Nat. Res. Def. Council, 555 U.S. 7, 24 (2008). The court must examine even an unopposed motion for preliminary injunction to ensure that the moving party has met the necessary elements for entering a preliminary injunction. Doe v. Lee, 2023 WL 2904575, at *3 (E.D. Tenn. Apr. 11, 2023). A preliminary injunction may issue if the moving party shows (1) its likelihood of success on the merits; (2) the likelihood of irreparable harm absent interim relief; (3) the balance

of equities weighs in the moving party's favor; and (4) the injunction serves the public interest.  Arborjet, Inc. v. Rainbow Treecare Scientific Advancements, Inc., 794 F.3d 168, 171 (1st Cir. 2015).

PC Connection has shown a strong likelihood of success as to enforcing paragraph 4.3 of the Employee Agreement.

"[T]he law does not look with favor upon contracts in restraint of trade or competition."  ACAS Acquisitions (Precitech) Inc. v. Hobert, 155 N.H. 381, 388-89 (2007).  "Such contracts are to be narrowly construed."  Id.  Nonetheless, "[r]estrictive covenants are . . . valid and enforceable if the restraint is reasonable, given the particular circumstances of the case."  Id.  The reasonableness of such a covenant is a matter of law for the court to decide.  Id.  The court must consider three requirements: (1) whether the restraint is narrowly tailored to protect the employer's legitimate interests; (2) whether its restrictions impose an undue hardship on the employee; and (3) whether the restriction is injurious to the public interest.  Id. at 389, 394.  Failure to meet any one of the three renders the restraint unenforceable.  Merrimack Valley Wood Prods., Inc. v. Near, 152 N.H. 192, 197 (2005).

"Covenants are valid only to the extent that they prevent employees from appropriating assets that are legitimately the employer's."  Concord Orthopaedics Prof. Ass'n v. Forbes, 142 N.H. 440, 443 (1997).  Legitimate interests include confidential information communicated by the employer to the employee.  ACAS Acquisitions, 155 N.H. at 389.   Legitimate interests also include "contacts

developed during the employment"; "an employee's special influence over the employer's customers"; and "the employer's development of goodwill and a positive image." Id.  Courts look to the scope of the covenant's restrictions on time, territory, and prohibited activity in determining whether the restrictive covenant is tailored to the employer's legitimate interests.  54A Am. Jur. 2d Monopolies and Restraints of Trade § 874, WestLaw (database updated Feb. 2023).  To be enforceable in these circumstances, a restrictive covenant must be limited to the "sphere of the employee's influence geographically" or within "the scope of the employee's customer contacts."  ACAS Acquisitions, 155 N.H. at 392; Concord Orthopaedics, 142 N.H. at 443 ("The legitimate interests of the employer generally extend only to those areas in which the employee had actual client contact."); Syncom Indus. v. Wood, 155 N.H. 73, 80 (2007) ("It is well established in our case law that when the legitimate interest an employer seeks to protect with a restrictive covenant is its goodwill with customers, a covenant that restricts a former employee from soliciting business from the employer's entire customer base sweeps too broadly.").

Through his employment with PC Connection, Sillich obtained information about PC Connection's customers' IT needs as well as the pricing that PC Connection could offer those customers from PC Connection's vendors.  Sillich also developed goodwill with those customers.  PC Connection has a legitimate interest in precluding Sillich from using this information and goodwill to encourage those customers to leave PC Connection.  See ACAS Acquisitions, 155 N.H. at 392; Merrimack Valley Wood Prods., 152 N.H. at 198 ("When an employee is put in a

position involving client contact, it is natural that some of the goodwill emanating from the client is directed to the employee rather than to the employer.  The employer has a legitimate interest in preventing its employees from appropriating this goodwill to its detriment.").

The non-solicitation provision in the Employee Agreement is tailored to that interest.  As pertinent here, it covers only the subset of customers who were PC Connection customers in the last year of Sillich's employment <u>and</u> who worked with Sillich, with whom Sillich had non-incidental contact, or about whom Sillich otherwise gained confidential information.  Furthermore, for purposes of the preliminary injunction, PC Connection only seeks to enforce the restrictive covenant as to those accounts for which Sillich actually performed work in the last year (the "covered customers"), which may be an even narrower subset.

The 18-month period to which the restrictive covenant extends after the end of Sillich's employment is reasonable under New Hampshire law.  <u>E.g.</u>, <u>Concord Orthopaedics</u>, 142 N.H. at 444 ("The covenant's duration of two years is also reasonable.  A covenant not to compete should last no longer than necessary for the employees' replacements 'to have a reasonable opportunity to demonstrate their effectiveness to customers.'").  PC Connection, however, has not shown at this stage that the tolling provision, which would delay the 18-month period during the time in which Sillich was in violation of the contract's restrictive covenants, is reasonable.  Thus, at this time, the preliminary injunction entered by the court will

7

not extend more than 18 months from the end of Sillich's employment with PC Connection.

The non-solicitation clause does not impose an undue hardship on Sillich. ACAS Acquisitions, 155 N.H. at 394 ("Restrictive covenants 'not only inure to the benefit of the employer but to the employee as well, in that the latter may, by giving a restrictive covenant, be able to place himself in a more advantageous position economically.'"). Sillich can still be employed in his profession, and he can still solicit non-covered customers for his new employer. It is not an unfair burden to prohibit him from leveraging the information he gained through his employment with PC Connection for a limited period of time.

The non-solicitation clause does not harm the public interest. See, e.g., HCC Specialty Underwriters, Inc. v. Woodbury, 289 F. Supp. 3d 303, 320 (D.N.H. 2018) (applying Massachusetts law). The public has an interest in the enforcement of legally enforceable contracts, and, considering the undisputed evidence currently before the court, this restrictive covenant does not unduly interfere with any public interest in liberty of employment nor with free consumer choice. See id. PC Connection is therefore likely to show that the non-solicitation clause is enforceable.

Sillich violated the plain terms of the non-solicitation clause because he solicited, encouraged, or induced covered customers to terminate or diminish their business relationships with PC Connection. Sillich also attempted to persuade covered customers to do business with another company when those customers could have conducted that business with PC Connection.

PC Connection has shown that it is likely to suffer irreparable harm in the absence of preliminary injunctive relief. "A showing of irreparable harm requires 'an actual, viable, presently existing threat of serious harm' that cannot adequately be remedied through money damages alone." E.g., Corporate Technologies, Inc. v. Harnett, 943 F. Supp. 2d 233, 242 (D. Mass. 2013) (quoting Bio-Imaging Techs., Inc. v. Marchant, 584 F.Supp.2d 322, 330 (D. Mass. 2008)).

The risk of disclosure of confidential information constitutes irreparable harm. Id. at 242-43. A business's price quotes "are indisputably confidential information that no third party could easily obtain." Id. at 240-41. Knowledge of customers' "anticipated future IT needs" is also confidential information. Id. ("Unlike the kinds of basic information that, while not publicly available as a technical matter, would be readily given upon basic inquiry such as contact information, information about anticipated needs is not something to which companies generally give access freely absent some kind of existing or anticipated relationship with the asking party."); see also Iron Mountain Information Mgmt., Inc. v. Viewpointe Archive Servs., Inc., 707 F. Supp. 2d 92, 112 (D. Mass. 2010) ("If Congrave were to use his extensive knowledge of Iron Mountain's business or his relationships with Iron Mountain's customers or his knowledge of customer's needs in his new position with Viewpointe, the plaintiff would undoubtedly suffer harm that cannot be quantified in monetary terms. By its nature, the injury caused would be irreparable."). In addition, "ongoing breaches of a non-solicitation agreement can separately constitute irreparable harm." Corporate Technologies,

9

943 F. Supp. 2d at 243. This is because it is "practically impossible to calculate the extent of the damage" to the former employer if the former employee "were permitted to poach his former clients in direct breach of his agreed-upon non-solicitation provision." Id. Loss of goodwill from solicitation in violation of a restrictive covenant is irreparable harm which is not "purely economic." Id.; Oxford Global Resources, Inc. v. Guerriero, 2003 WL 23112398, at *11 (D. Mass. Dec. 30, 2003) (stating that damages can be calculated for goodwill, but they would not "fully capture" the loss because it involves not just loss of sales, "but lost reputation").

Sillich leveraged confidential information obtained in the course of his employment to harm PC Connection's goodwill with covered customers. The evidence also shows that Sillich has solicited covered customers using that information notwithstanding the terms of the Employee Agreement. The court finds that PC Connection has shown that Sillich is likely to continue such misuse of PC Connection's confidential information unless enjoined. Thus, PC Connection has shown that it is likely to suffer irreparable harm if an injunction is not issued and that such harm cannot be remedied by money damages.

The balance of hardships weighs in favor of PC Connection. PC Connection has a legitimate and strong interest in protecting its confidential information and its accrued goodwill with covered customers. The preliminary injunction would only prohibit Sillich from soliciting and doing business with the 120 covered customers; he would still be permitted to work at his job and earn a living by soliciting and doing business with any of the many other businesses that exist. See Corporate

Technologies, 943 F. Supp. 2d at 244-45 ("Given this narrow scope, defendants will not suffer severe hardship."), id. at 244 ("Absent an injunction, CTI stands to lose irretrievably aspects of its reputation and goodwill as well as the business of some of its most significant clients."). Furthermore, the injunction would only last for 18 months, after which time Sillich would be free to solicit those 120 businesses. Id. ("Subject to the injunction, OnX stands only to lose the uncertain opportunity to benefit in the next year from business with new clients in the narrow pool of Harnett's former accounts at CTI."); Oxford Global Resources, 2003 WL 23112398, at *12 ("[T]his question is not difficult to resolve. . . . If Oxford receives preliminary relief, defendants will be prohibited from contacting a fairly tiny slice of the total market. Given this narrow scope, defendants will not suffer severe hardship.").

The public interest also favors PC Connection. The court has found that the non-solicitation clause is likely enforceable, which includes a finding that it is not against the public interest. And, "[t]here is a public interest in ensuring that enforceable restrictive covenants are enforced." HCC Specialty Underwriters, 289 F. Supp. 3d at 326; Oxford Global Resources, 2003 WL 23112398, at *12 ("As a formal matter, the question (under federal law) whether a preliminary injunction will harm the public interest is distinct from the prior question (under Massachusetts law) whether enforcement of the covenant at all (i.e., in a suit for damages) will harm the public interest. That said, I find that the same analysis applies, and reincorporate by reference my findings above."); Iron Mountain Mgmt.,

707 F. Supp. 2d at 112-13 ("No negative impact on the public interest results from holding Congrave to his obligations under the Agreement.").

However, PC Connection's proposed preliminary injunction (doc. no. 29, 29-1) contains certain language that is insufficiently precise in relation to the claim for which PC Connection has demonstrated a likelihood of success. Specifically, the proposed preliminary injunction would enjoin Sillich from "[a]iding any other reseller of IT hardware or software products or services, including without limitation Partner One IT, in the solicitation of any of" the covered customers. Doc. no. 29-1, ¶ 5.A.2. The court declines to include this language in its preliminary injunction. Rather, the court's preliminary injunction will track the language of the contract to which the parties agreed.

In addition, PC Connection has not shown at this stage that it is likely to succeed in showing that paragraph 9 of the Employee Agreement, which states that the 18-month period of the contract's restrictive covenants are tolled "during any period" in which Sillich is in violation of those restrictions, is enforceable. Accordingly, the preliminary injunction will last only for the 18-month period immediately following the termination of Sillich's employment, per paragraph 4.3 of the Employee Agreement.

## CONCLUSION

For those reasons, PC Connection has demonstrated its entitlement to a preliminary injunction, which is entered as follows:

1. With respect to the 120 businesses listed in paragraph 5 (the "covered customers"), Peter Sillich is enjoined from directly or indirectly:

    a. soliciting, encouraging or inducing any of those covered customers to terminate or diminish its business relationship or patronage with PC Connection;

    b. seeking to persuade or induce any of those covered customers to conduct with anyone else any business or activity that said account conducts or could conduct with PC Connection; and

    c. accepting business from any covered customer.

2. PC Connection is not required to post bond. Sillich has not made any argument that the court should require PC Connection to post bond under Federal Rule of Civil Procedure 65(c). Without any argument from Sillich about the proper amount for a bond, the court finds that he has waived the bond requirement.

3. This injunction shall terminate when the first of the following events occurs: (a) the passage of 18 months from July 28, 2022, which was the end of Sillich's employment with PC Connection; or (b) the court's entry of a final judgment in this action.

4. Any party may move to modify or dissolve this preliminary injunction at any time. On its own motion, the court may modify or dissolve this preliminary injunction at any time.

5. The following businesses are the "covered customers":

    [redacted]



14





SO ORDERED.

_____
Landya McCafferty
United States District Judge

May 11, 2023

cc: Counsel of Record