UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

PC Connection, Inc.,

    v.                                                              Civil No. 22-cv-524-LM
                                                              Opinion No. 2023 DNH 069 P

Peter Sillich

**O R D E R**

Plaintiff PC Connection brings suit against defendant Peter Sillich for breach of restrictive covenants in an employment contract. Sillich filed a motion "to enforce settlement agreement" (doc. no. 14). In his motion, Sillich argues that the parties entered into a binding settlement agreement which requires Sillich to make a payment to PC Connection and the parties to agree on a stipulated order which would resolve this case. PC Connection objects. PC Connection argues that even if the settlement were binding, Sillich violated its terms just one day after it was entered. PC Connection contends that Sillich's "blatant violation of the terms of the proposed settlement agreement constituted a repudiation of that agreement." Doc. no. 20 at 2.

The court held a status conference on April 5, 2023, and asked Sillich to identify the evidentiary standard through which the court should view his motion. The court indicated its view that the summary judgment standard was most appropriate, considering the parties' use of evidence and facts outside the pleadings. See Fed. R. Civ. P. 12(d). The court provided Sillich an opportunity to argue, in writing, why the court should not treat the motion as one for summary judgment.

The court also provided Sillich an opportunity to amend the motion to provide any additional materials he wishes the court to consider when evaluating his motion. See Fed. R. Civ. P. 56(c)-(e).  Sillich filed no response and no additional materials.[1]

## STANDARD OF REVIEW

Sillich's motion to enforce the settlement agreement is most appropriately viewed as a motion for summary judgment.  Malave v. Carney Hosp., 170 F.3d 217, 220 (1st Cir. 1999) ("If . . . the settlement collapses before the original suit is dismissed, the party who seeks to keep the settlement intact may file a motion for enforcement. . . . [A] trial court may not summarily enforce a purported settlement agreement if there is a genuinely disputed question of material fact regarding the existence or terms of that agreement.").  Summary judgment is proper only if the moving party can demonstrate that there is no evidence in the record to support a judgment for the nonmoving party.  Borges v. Serrano-Isern, 605 F.3d 1, 5, 8 (1st Cir. 2010); see also Fed. R. Civ. P. 56(a).  If the moving party succeeds in making that showing, "the burden shifts to the nonmoving party, who must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor."  Borges, 605 F.3d at 5.  The nonmoving party's failure to meet that burden by reference to "significantly probative" materials "of evidentiary quality" entitles the moving party to summary judgment.  Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016).  In

---

[1] On May 11, 2023, the court issued a preliminary injunction relating to the non-solicitation provision of the employment contract.  Doc. no. 33.

evaluating a motion for summary judgment, the courts must view the evidence in the light most favorable to the nonmoving party, must draw all reasonable inferences in that party's favor, and may neither make credibility determinations nor weigh the evidence. Harris v. Scarcelli, 835 F.3d 24, 29 (1st Cir. 2016); Hicks v. Johnson, 755 F.3d 738, 743 (1st Cir. 2014).

## BACKGROUND

PC Connection initially filed this suit in state court, and Sillich removed it to this court on November 18, 2022. PC Connection alleges that it employed Peter Sillich as an "account manager" and that Sillich agreed to a contract with PC Connection as part of his employment. That contract contained restrictive covenants, including non-solicitation and non-competition clauses. In this suit, PC Connection alleges that Sillich breached his employment contract. Specifically, PC Connection alleges that notwithstanding the restrictive covenants, Sillich started working with a PC Connection competitor, PartnerOne IT, after Sillich's employment at PC Connection ended. PC Connection asserts that Sillich has solicited the business of PC Connection customers in that role.

The parties engaged in settlement negotiations soon after PC Connection filed this suit. Those negotiations continued through January 2023. On January 5, PC Connection's counsel proposed a settlement with three central terms:

- For 18 months running from the consummation of the agreement, Sillich would have no direct or indirect contact with any of the accounts assigned to him at the time of the termination of his employment.

- PC Connection would receive a cash payment of $45,000 to cover its attorney fees, costs, and damages.

- The settlement terms would be incorporated into a proposed stipulated order for approval by this court.

The next day, January 6, Sillich (through counsel) agreed to the first and third terms, but he rejected the cash payment. On January 11, after further discussion, Sillich counteroffered to pay $5,000 within 10 days. PC Connection responded the same day, agreeing to the $5,000 payment.

However, on January 12, 2023, Sillich, on behalf of his new employer, PartnerOne IT, issued a price quote for a software purchase to a business called ROCIC. ROCIC is one of the accounts that had been assigned to Sillich at the time of his termination at PC Connection. After learning of this information, PC Connection declined to perform its end of the settlement agreement.[2]

Sillich denies having contacted ROCIC after the settlement agreement or soliciting ROCIC's business. In support, Sillich submitted the affidavit of Sidney Banks, the IT operations manager at ROCIC. In his affidavit, Banks states that ROCIC had an Adobe license expiring and that no one from PC Connection contacted him about renewing the license.[3] Banks called Sillich, and during that call Banks learned that Sillich no longer worked for PC Connection but instead had

---

[2] The court assumes that Sillich, in light of PC Connection's indication that it would not perform under the settlement agreement, did not pay the $5,000 to PC Connection, although neither party identified evidence on this fact.

[3] PC Connection submitted evidence that a PC Connection representative had, in fact, contacted Banks about renewing the Adobe license.

4

begun working for PartnerOne IT.  Sillich told Banks to renew the Adobe license with PC Connection, which he did.  Subsequently, Banks needed to renew another software license, and he contacted PartnerOne IT to ask for a quote.  Banks states that Sillich did not solicit him for the business.  Doc. no. 26-1 at 3.  Rather, Banks called PartnerOne IT.  According to Banks, PartnerOne IT provided him the requested quote on January 10, 2023, and it modified the quote at his request on January 12.

## DISCUSSION

Sillich argues that the parties reached a binding settlement agreement on January 11, which the court should enforce.  PC Connection responds that, even if the settlement agreement is binding, Sillich's attempt to obtain business from ROCIC immediately after making the agreement constitutes a material breach of that agreement.  Therefore, PC Connection contends, it is absolved from performing under the agreement.

Settlement agreements are contracts by nature, so they are governed by the principles of contract law.  Poland v. Twomey, 156 N.H. 412, 414 (2007).[4]  Thus, an enforceable settlement agreement requires offer, acceptance, consideration, and a meeting of the minds.  Id.  "A breach of contract occurs when there is a failure without legal excuse, to perform any promise which forms the whole or part of a contract."  Id. at 415.  One such legal excuse is a party's material breach of the

---

[4] Because this case arises in diversity, the court applies the law of New Hampshire in analyzing whether the settlement agreement is enforceable.  See Fidelity & Guar. Ins. Co. v. Star Equip. Corp., 541 F.3d 1, 5 (1st Cir. 2008).

agreement. Fitz v. Coutinho, 136 N.H. 721, 725 (1993) ("Only a breach that is sufficiently material and important to justify ending the whole transaction is a total breach that discharges the injured party's duties."). "A breach is material if: (1) a party fails to perform a substantial part of the contract or one or more of its essential terms or conditions; (2) the breach substantially defeats the contract's purpose; or (3) the breach is such that upon a reasonable interpretation of the contract, the parties considered the breach as vital to the existence of the contract." Gaucher v. Waterhouse, 175 N.H. 291, 296 (2022).

Furthermore, enforcement of a settlement agreement is an equitable remedy. See Poland, 156 N.H. at 415. Thus, enforcement of a settlement agreement is "within judicial discretion" and "subject to general principles of equity that are not peculiar to contract disputes, such as those that bar relief to one . . . who has come into court with unclean hands." Restatement (Second) of Contracts § 357, cmt. c. "When a genuinely disputed question of material fact does exist, the court should hold a hearing and resolve the contested factual issues." Fidelity & Guar. Ins. Co., 541 F.3d at 5; Malave, 170 F.3d at 220 ("As a general rule, a trial court may not summarily enforce a purported settlement agreement if there is a genuinely disputed question of material fact regarding the existence or terms of that agreement. In such circumstances, the cases consentingly hold that the court instead must take evidence to resolve the contested issues of fact.").

Here, assuming that the parties formed a valid contract, summary enforcement of the settlement agreement would be improper because a genuine

dispute of material fact exists as to whether Sillich materially breached the agreement's terms. PC Connection submitted evidence that Sillich had direct or indirect contact with ROCIC—a customer covered by the settlement agreement— immediately after the parties formed the settlement agreement. Sillich submitted evidence that he did not have such contact with ROCIC.

Sillich does not argue that such a breach, if it occurred, is immaterial. Therefore, taking the facts in the light most favorable to PC Connection, it had a legal excuse not to perform its end of the deal (i.e., dismissing its claims in this case). In addition, enforcement of a settlement agreement is within the court's discretion, and the court must consider principles of equity when deciding whether to enforce a settlement agreement. See Poland, 156 N.H. at 415; Restatement (Second) of Contracts § 357, cmt. c. If, on the record before the court, PC Connection's version of events were ultimately credited over Sillich's version, the court would not be able to enforce the settlement agreement because it would be inequitable to do so. Accordingly, Sillich has not shown that he is entitled to summary judgment. See Malave, 170 F.3d at 222 ("Summary enforcement of arm's-length settlements is a useful device to hold litigants to their word, but the procedure ought to be reserved for situations in which a struck bargain is admitted or proved, and the basis for nonperformance is insubstantial.").

To be sure, Sillich submitted competing evidence that ROCIC reached out to PartnerOne IT of its own accord and without involving Sillich. Nonetheless, the court cannot resolve evidentiary disputes in the context of summary judgment. Id.

Furthermore, neither party has had the opportunity to undertake appropriate discovery on these issues, and, as a result, the record before the court is threadbare. This further counsels against a summary enforcement of the settlement agreement. See Collision Commc'ns, Inc. v. Nokia Sols. & Networks OY, No. 20-cv-949-JD, 2021 WL 1124725, at *3 (D.N.H. Mar. 24, 2021).

## CONCLUSION

Sillich's motion to enforce settlement (doc. no. 14) is denied without prejudice.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

May 31, 2023

cc: Counsel of Record